18-0284-cv
Gordon Gamm, et al. v. Sanderson Farms, Inc., et al.

# United States Court of Appeals
# for the Second Circuit

August Term, 2018

(Argued: August 31, 2018            Decided: December 10, 2019)

Docket No. 18-0284-cv

————————

GORDON GAMM, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, DON PRITCHARD,

Plaintiffs – Appellants,

v.

SANDERSON FARMS, INC., JOE F. SANDERSON, JR., MICHAEL D. COCKRELL, LAMPKIN BUTTS,

Defendants – Appellees.

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:     WINTER, WALKER, AND DRONEY, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard M. Berman, Judge), granting appellees' motion to dismiss appellants' complaint for failure to plead, with the requisite particularity, securities fraud under Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5. The complaint alleged that, as a predicate for appellants' securities fraud claim, appellees had engaged in an illegal antitrust conspiracy, the nondisclosure of which rendered various statements and SEC filings false and misleading. The law is well established that a party, when making securities fraud allegations on information and belief, must plead material misstatements and omissions with particularity. We clarify that if statements were rendered false or misleading through the nondisclosure of illegal activity, the facts of those underlying illegal acts must also be pleaded with particularity. Because appellants have failed to allege the details of the underlying antitrust conspiracy with particularity, the judgment of the district court is **AFFIRMED**.

TAMAR A. WEINREB (Marc I. Gross, Jeremy A. Lieberman, Pomerantz LLP, New York, NY, on the brief) for Plaintiffs-Appellants.

JOSHUA Z. RABINOVITZ (Robert J. Kopecky, Nathaniel J. Kritzer, Stacy Pepper, Kirkland & Ellis LLP, Chicago, IL and New York, NY, on the brief) for Defendants-Appellees.

WINTER, Circuit Judge:

Gordon Gamm and Don Pritchard ("appellants") appeal from the district court's dismissal of their complaint under Fed. R. Civ. P. 12(b)(6). The complaint alleged as a basis for a securities fraud class action suit, that appellees, producers of chicken, engaged in an illegal antitrust conspiracy, the nondisclosure of which rendered various SEC filings false and misleading under Section 10(b) of the

Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5 promulgated thereunder.[1] The district court dismissed, with prejudice, appellants' second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plead with sufficient particularity facts of the underlying antitrust conspiracy. This appeal followed.

In light of the Private Securities Litigation Reform Act ("PSLRA") and binding precedent of the Second Circuit, we hold that the district court was correct in its dismissal. It has long been recognized that private plaintiffs in securities fraud actions must plead material misstatements and omissions with particularity when making allegations on information and belief. Novak v. Kasaks, 216 F.3d 300, 313-14 (2d Cir. 2000). We further clarify that, when a complaint claims that statements were rendered false or misleading through the nondisclosure of illegal activity, the facts of those underlying illegal acts must also be pleaded with particularity. Because appellants have failed to meet this pleading standard for the underlying allegations of illegal antitrust conspiracy,

[1] Appellants also brought a claim for violation of Section 20(a) of the Exchange Act against appellees for control person liability, which depends on there first being a primary violation of Section 10(b).

we affirm the district court. We do not reach the issue of scienter or reliance as alternate grounds for affirmance.

## BACKGROUND

In assessing a motion to dismiss, a court must view the evidence – and interpret any allegations – in the light most favorable to the plaintiffs, and it must draw reasonable inferences in plaintiffs' favor. See Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86 (2d Cir. 2019).

Appellants Gordon Gamm and Don Pritchard acquired shares of Sanderson Farms, Inc. ("Sanderson Farms") between December 17, 2013 and November 17, 2016, the "Class Period" alleged in the relevant complaint.

Appellee Sanderson Farms is a fully integrated poultry processing company engaged in the production, processing, marketing, and distribution of fresh and frozen chicken and other prepared food items. Appellees Joe F. Sanderson Jr., Michael Cockrell, and Lampkin Butts serve as the company's Chief Executive Officer, Chief Financial Officer, and Chief Operations Officer, respectively.

The chicken[2] industry is vertically integrated in that a relevant company tends to own or control every aspect of the breeding, hatching, feeding, basic processing, and selling of chicken.  There are high barriers to market entry: A new entrant faces significant start-up costs and lengthy periods of regulatory approval.

In addition, the market for chicken is inelastic.  When chicken prices go up, consumers' buying habits remain about the same.  When prices go down, consumers' buying habits also do not change.  Therefore, industry-wide profits are driven by the price of chicken, rather than by increased or decreased market demand.

Because of the inelastic market, the chicken industry has historically been marked by "boom and bust cycles" in which producers increase chicken production in response to rising prices, causing an oversupply in the market.  The oversupply of chicken, along with stable demand, then forces down the

[2] The industry term for the chicken at issue in this case is "broilers," which is ready-to-cook chicken available at grocery stores, making up "approximately 98% of all chicken meat sold in the United States." (JA 130 ¶ 32).  For simplicity, this opinion refers to "broilers" as "chicken."

market price. Chicken becomes less profitable and producers must cut supply until the price eventually rises again.

Appellants explain that this cyclical market pattern changed, beginning in 2008, when Sanderson Farms and several other large chicken producers began colluding in an anticompetitive conspiracy to inflate the price of chicken by coordinating supply reductions and manipulating a chicken price index.

The crux of the alleged conspiracy was that, to defeat the natural "boom-and-bust" cycle of chicken prices, producers all agreed to keep their supply low while chicken prices were high, so that they would all enjoy the high price of chicken.

Sanderson Farms accomplished its supply reductions by destroying breeder hens and eggs, exporting eggs from the U.S. starting in 2013, and "dumping" excess chicken inventories in foreign markets where they sold for a fraction of the U.S. price.

Furthermore, Sanderson Farms and its competitors were able to monitor one another's reductions, and ensure that all producers maintained low supply through the use of Agri Stats, Inc., a private company that generates chicken industry data reports. Producers provide Agri Stats with detailed data about

6

their operations through actual sales invoices. Agri Stats then generates detailed reports, including in them data on weighted average price, top third average, and bottom third average; on volume traded on a daily, weekly, and monthly basis; on supply and sales volume by detailed product type and form; and on pricing information for whole and cut-up chickens. Although Agri Stats purports to maintain the confidentiality and anonymity of individual companies in their reports, the reports are detailed enough that a reasonably informed producer could discern the identity of competitors.

Sanderson Farms allegedly planned the antitrust conspiracy with its competitors during industry meetings and conferences, including those of the National Chicken Council, of which appellees and its co-conspirators were members. The conspiracy was also facilitated at investor conferences organized by Wall Street analysts and attended by Sanderson Farms and its competitors and through competitor plant tours.

Relatedly, Sanderson Farms and its competitors allegedly manipulated poultry prices by colluding to inflate the price of chicken reflected in an index referred to as the Georgia Dock. Chicken prices are reported by three entities: Urner Barry, the United States Department of Agriculture ("USDA"), and the

7

Georgia Department of Agriculture's ("GDA") Georgia Dock. The USDA and Urner Barry's indices are based upon a system of double verification, which includes telephonic and written surveys of chicken producers as well as verification of prices reported to chicken purchasers such as brokers and customers. However, no such verification process existed for the Georgia Dock. This, appellants argue, rendered the Georgia Dock susceptible to manipulation.

Additionally, in order to manipulate the Georgia Dock, appellees would have had to work in coordination with their competitors. This is so because the Georgia Dock has a rule whereby a preliminary dock price calculation is made based on the single price quotation from each company. Then, any company whose quote is more than one cent above or below the initial dock price calculation will not be included in the dock price for that week. Its quote is taken out and the dock price is recalculated without it. The purpose of this rule is to prevent one company from having the ability to greatly influence the price.

Beginning in January 2015, the Georgia Dock price began to depart significantly from the pricing reflected by the other indices, which appellants attribute to Sanderson Farms and its competitors collectively submitting similar, artificially high prices to the Georgia Dock. In August 2016, the USDA stopped

using the Georgia Dock index, and the GDA suspended the index permanently in December 2016.

Appellants claim that the failure to disclose these collusive acts rendered various statements issued by Sanderson Farms during the class period false and misleading.

Specifically, in its Annual Report on Form 10-K filed with the Securities and Exchange Commission ("SEC") on December 17, 2013, Sanderson Farms stated "The Registrant [Sanderson Farms] is subject to significant competition from regional and national firms in all markets in which it competes." SAC ¶ 82. "The increase in cash flows from operating activities of $47.0 million resulted primarily from improved market prices for poultry products during fiscal 2013 as compared to fiscal 2012, and a $27.2 million decrease in live chicken, feed, and egg inventories attributable to the declining costs of feed grains experienced as we moved through the fourth quarter of fiscal 2013." SAC ¶ 84.

In its Quarterly Report on Form 10-Q filed with the SEC on February 25, 2014, Sanderson Farms represented that "The Company competes with regional and national firms, some of which have greater financial and marketing resources than the Company." SAC ¶ 87. In an accompanying press release, appellees

stated that Sanderson Farms "competes with regional and national firms." SAC ¶ 88.

Sanderson Farms made similar disclosures on May 29, 2014, and every subsequent quarterly disclosure through August 25, 2016. These statements were materially false and misleading, according to appellants, because "Sanderson Farms did not compete with its industry peers but instead engaged in collusive conduct, facilitated by their extensive information sharing via Agri Stats, to prop up broiler prices through systemic reductions of the broiler supply, destruction of eggs, and manipulation of poultry prices reflected on the Georgia Dock index." SAC ¶ 138. Appellants further claimed that the undisclosed anticompetitive conduct "rendered Sanderson Farms vulnerable to litigation and regulatory scrutiny for potential violations of the federal antitrust laws as well as reputational damage." Id.

In the fall of 2016, several antitrust complaints were filed against U.S. chicken producers, including the following: On September 2, 2016, Maplevale Farms, Inc. filed its antitrust class action complaint (the "Maplevale Complaint") in the Northern District of Illinois against Sanderson Farms and several other poultry producers, alleging that they had conspired since 2008 to manipulate the

prices of chicken in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7 (the "Sherman Act"). On October 4, 2016, a group of individual consumers filed an antitrust class action complaint in the Northern District of Illinois against Sanderson Farms and several of its competitors, alleging violations of the Sherman Act (the "Monahan Complaint"). Following the filing of the Monahan Complaint, Sanderson Farms' share price fell $3.98 or 4.14%, to close at $92.21 on October 4, 2016.

On October 7, 2016, Pivotal Research downgraded Tyson from "Hold" to "Sell" citing the "powerfully convincing" allegations of price manipulation by the defendants in the Maplevale Complaint. Soon after, Sanderson Farms' share price fell $4.03 or 4.32%, to close at $89.15 on October 7, 2016.

On November 3, 2016, the New York Times published an article entitled "You Might be Paying Too Much for Your Chicken," which revealed that the United States Department of Agriculture had started an inquiry into the Georgia Dock index. The article pointed out that the Georgia Dock price for chicken differed significantly from the prices provided in similar indices. Following this news, Sanderson Farm stock fell $6.31, or almost 7%.

On November 17, 2016, the Washington Post published an article entitled, "If you thought you were paying fair prices for chicken at the supermarket, think again." The article revealed new information, provided by Arty G. Schronce of the GDA, suggesting issues with the credibility of the Georgia Dock index. The price of Sanderson Farms shares continued to fall for the next three consecutive trading days, closing on November 21, 2016 at $78.98, or a three-day loss of almost 8%.

a) Procedural History

This case is one of several shareholder suits brought against chicken producers following the wave of antitrust suits and accompanying stock price drops.[3]

---

[3] On October 20, 2016, a putative class action was filed in the District of Colorado against Pilgrim's Pride Corporation, and its executives, for violations of the Exchange Act. On November 28, 2016, a similar class action complaint was filed against Tyson Foods, Inc. and its executives in the Western District of Arkansas. The complaint against Tyson Foods, Inc. was dismissed on July 26, 2017, in a detailed memorandum opinion. The Western District of Arkansas (Timothy L. Brooks, J., presiding) dismissed the shareholder suit on July 26, 2017, In re Tyson Foods, Inc. Sec. Litig., 275 F. Supp. 3d 970 (W.D. Ark. 2017), and then declined to provide leave to amend on March 31, 2018, In re Tyson Foods, Inc. Sec. Litig., 2018 WL 1598670 (W.D. Ark. Mar. 31, 2018). The complaint against Pilgrim's Pride, Inc. was not dismissed until March 14, 2018. Hogan v. Pilgrim's Pride Corporation, 2018 WL 1316979 (D. Col. Mar. 14, 2018).

On October 28, 2016, appellants filed a putative class action in the Southern District of New York on behalf of all persons who purchased Sanderson Farms shares between December 17, 2013 and November 17, 2016. On February 13, 2017, appellants Gordon Gamm and Don Pritchard were appointed lead plaintiffs, and Pomerantz LLP was appointed lead counsel. Gamm et al., v. Sanderson Farms, Inc., et al., 16-8420, Dkt. No. 23 (Feb. 13, 2017). On March 30, 2017, appellants filed an amended complaint.

On May 18, 2017, at a conference before Judge Berman, counsel for the parties set a briefing schedule for a motion to dismiss and response. Judge Berman, pursuant to his individual practices, requested that the parties submit pre-motion letters. The court explained to appellants that, through the pre-motion letters, appellants would be able to determine appellees' "bases" for dismissal, and amend their complaint a second time, accordingly. However, the court cautioned that any second amended complaint "would be the last amendment," stating, that "if [appellants] were to lose the motion [to dismiss]" the court would not provide further leave to amend.

Pre-motion letters were submitted on May 25 and June 1, 2017. On June 15, 2017, appellants filed a second amended complaint, alleging that appellee

Sanderson and its Chief Executive Officer Joe F. Sanderson, Jr., Chief Financial Officer Michael D. Cockrell, and Chief Operations Officer Lampkin Butts violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 20(a) of the Exchange Act, by making statements that were materially false and misleading because "they failed to disclose material adverse information and misrepresented the truth about Sanderson Farms' finances and business prospects."  SAC ¶ 169.

Appellees moved to dismiss for failure to adequately plead the elements of securities fraud on June 29, 2017.  On January 19, 2018, the district court granted appellees' motion to dismiss with prejudice.  Decision and Order, Gamm et al., v. Sanderson Farms, Inc., et al., 16-8420, Dkt. No. 55 (S.D.N.Y. Jan. 19, 2018). Observing that the case was "strikingly similar" to the suit against Tyson Foods, Inc., the district court concluded that because "[p]laintiffs fail to support their allegation of a chicken supply reduction conspiracy with particularized facts," they had not properly alleged a Section 10(b) violation.  Decision and Order at 5. The case was timely appealed.

**DISCUSSION**

We review de novo a district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 65 (2d Cir. 2012). Generally, when undertaking this review, we ask whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court accepts as true "all well-pleaded factual allegations in the complaint," draws "all reasonable inferences in favor of the nonmoving party," S.E.C. v. Pimpco Advisors Fund Mgmt., LLC, 341 F. Supp. 2d 454, 463 (S.D.N.Y. 2004), and considers, in addition to the complaint, and written instruments attached, statements incorporated by reference, and public disclosure documents filed with the SEC, Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991). The court may also consider items of which it has taken judicial notice under Federal Rule of Evidence 201. See id.

The pleadings are typically subject to Federal Rule of Civil Procedure 8, requiring a "short and plain statement of the claim." This is understood to require "more than an unadorned, the defendant-unlawfully-harmed-me

15

accusation" but does not require "detailed factual allegations." Iqbal, 556 U.S. at 678.

This appeal involves a different pleading standard. Claims of fraud must be "state[d] with particularity" under Federal Rule of Civil Procedure 9(b). The pleading standard for securities fraud suits under Section 10(b) is further affected by the requirements of the PSLRA:

> [i]n any private action arising under this chapter in which the plaintiff alleges that the defendant—
> (A) made an untrue statement of a material fact; or
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1). Additionally, where "proof that the defendant acted with a particular state of mind" is at issue, the PSLRA requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

We have held that Rule 9(b) and the PSLRA require a securities fraud complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). This rule "serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

To state a claim for securities fraud under Section 10(b) and Rule 10b-5 promulgated thereunder, a plaintiff must allege that the defendant: "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." In re IBM Corp. Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998) (citations omitted).

Appellants acknowledge that their allegations of misstatements and omissions – also known as the "falsity" prong of a 10(b) action – must be pleaded

17

with particularity. However, they disagree as to whether facts of the underlying antitrust conspiracy must similarly be pleaded with particularity or must merely meet the Rule 8 plausibility standard. Appellants argue that "there is no public policy reason" supporting the use of a heightened pleading standard for allegations of anticompetitive conduct "simply because they underpin a securities fraud class action." They argue that their complaint was "replete with factual allegations" providing sufficient notice to appellees. Appellees respond that the district court was correct to require that allegations of antitrust conspiracy be pleaded with particularity.

Under Rule 9(b) and the PSLRA, the circumstances of a fraud include "the basis" for that contention. First, in this matter, the alleged fraud and the facts of the alleged anticompetitive conspiracy are inseparable and the clear language of the statute requires that underlying facts be pleaded with particularity. As discussed above, 15 U.S.C. § 78u-4(b)(1) requires that a securities fraud claim based on information and belief must "state with particularity *all facts* on which that belief is formed." (emphasis added). In this case, appellants' nondisclosure and material omission claims are entirely dependent upon the predicate allegation that Sanderson participated in a collusive antitrust conspiracy. In

18

order to properly provide "all facts" upon which their securities fraud claim is based, their allegations must also provide particularized facts about the underlying conspiracy. Until and unless they have done so, appellants' complaint had not met the burden of explaining what rendered the statements materially false or misleading.

District courts within this circuit have correctly taken the view that when the nondisclosure of an illegal act is the basis of a 10(b) complaint, the illegal act must be alleged with particularity. See, e.g., In re Axis Capital Holdings Ltd. Sec. Litig., 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) ("If the complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the nondisclosure of the alleged scheme are fatally flawed."); In re Banco Bradesco S.A. Sec. Litig., 277 F. Supp. 3d 600, 631 (S.D.N.Y. 2017) ("As part of the 'circumstances constituting fraud,'" an alleged bribery scheme, nondisclosure of which formed the basis of the securities suit, "must be pleaded with particularity.") (quoting Fed. R. Civ. P. 9(b)).

District courts in other circuits that have considered follow-on securities class actions arising out of allegations of antitrust conspiracy have all concluded that antitrust schemes must be pleaded with particularity.[4]

The rationale for a heightened pleading standard for predicate acts hearkens back to <u>Novak v. Kasaks.</u> <u>See</u> 216 F.3d at 313-14.  There, we prescribed the proper pleading standard for securities fraud suits in light of the recent passage of the PSLRA.  We acknowledged that the PSLRA "does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based," but rather that plaintiffs must "plead with particularity *sufficient* facts to support those beliefs." (emphasis in original).  Accordingly, this court held that "a complaint can meet

---

[4] In <u>Hogan</u>, the District of Colorado recognized that "[r]equiring that allegations of underlying wrongdoing that rest on information and belief be supported by particularized facts comports with the PSLRA's dictate that 'if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is made.'" 2018 WL 1316979 at *5 (March 14, 2018) (quoting 15 U.S.C. § 78u-4(b)(1)). Similarly, in <u>In re Tyson Foods</u>, the Western District of Arkansas concluded that "to the extent that a plaintiff's allegations of underlying wrongdoing 'regarding the statement or omission' rest 'on information and belief,' those allegations must be supported by particularized facts." 275 F. Supp. 3d at 985 (quoting 15 U.S.C. § 78u-4(b)(1)).

the new pleading requirement imposed by [the PSLRA] by providing documentary evidence and/or a sufficient general description of the personal sources of the plaintiffs' beliefs," although there is no requirement that the plaintiffs name confidential sources. Id.

Applying that standard here, appellants were required to plead with particularity sufficient facts to support their contention that Sanderson Farms' financial disclosures were misleading. This necessarily requires that facts of the underlying anticompetitive conduct be pleaded with particularity. Otherwise, the complaint provides no basis as to what rendered Sanderson's statements false or misleading. Because Sanderson Farms' statements were materially false or misleading only to the extent that anticompetitive conduct actually occurred, appellants must plead sufficient — though not exhaustive — facts describing the essential elements of that underlying conduct.

Requiring that illegal acts underpinning a securities fraud suit be pleaded with particularity also comports with the stated intent and public policy rationale of the PSLRA. The requirements of Rule 9(b) and the PSLRA operate "to deter strike suits wherein opportunistic private plaintiffs file securities fraud claims of dubious merit in order to exact large settlement recoveries." Novak, 216 F.3d at

21

306. See also H.R. Conf. Rep. No. 104-369, at 31 (1995) (observing "significant evidence of abuse in private securities lawsuits," including "the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer," and "the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle") (reprinted in 1995 U.S.C.C.A.N. 730, 730). As we have previously noted, it "is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically." Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 115 (2d Cir. 1982).

A stock-issuing company like Sanderson cannot be required, whenever accused of illegal activity, to simultaneously defend itself in an accompanying securities fraud suit based on facts not alleged with the level of particularity required by the statute. Such a reality would harm the company's stock and contravene the purpose of the securities laws — to protect shareholders' interests.

22

The clear language of the statute, the existing case-law, and the stated intent of the securities laws all lead us to recognize that, when a complaint claims that statements were rendered false or misleading through the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity, in accordance with the heightened pleading requirement of Rule 9(b) and the PSLRA.

In practical terms, the pleading standard required appellants to have alleged the basic elements of an underlying antitrust conspiracy, which are: "(1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce." Maric v. St. Agnes Hosp. Corp., 65 F.3d 310, 313 (2d Cir. 1995). The first element, and the "crucial question" in any antitrust claim, has to do with "whether the challenged anticompetitive conduct stems from independent decision[s] or from an agreement, tacit or express." Twombly, 550 U.S. at 553. An agreement can be alleged through direct evidence; however, in most antitrust cases "this type of 'smoking gun' can be hard to come by, especially at the pleading stage." Mayor and City Council of Baltimore, Md. v. Citigroup, Inc., 709 F. 3d 129, 136 (2d Cir. 2013). As an alternative, a complaint may "present circumstantial facts supporting the inference that a conspiracy

23

existed." Id. This inference may arise through the alleging of "conscious parallelism, when such interdependent conduct is accompanied by circumstantial evidence and plus factors." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001). Such "plus factors" may include: "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications." Twombly v. Bell Atlantic Corp., 425 F.3d 99, 114 (2d Cir. 2005). In sum, an agreement may be alleged through conscious parallelism together with plus factors, but "alleging parallel conduct alone is insufficient, even at the pleading stage." Citigroup, 709 F.3d at 136.

Although appellants do allege that Sanderson engaged in "anticompetitive" conduct, there is virtually no explanation as to how that collusive conduct occurred, and whether and how it affected trade.

On the first element – tacit agreement – appellants allege mere parallel conduct, and lack indicia of mutuality or otherwise interdependent action. Specifically, appellants allege that Sanderson Farms and its industry peers engaged in supply reductions through a variety of means, including destroying broiler breeder hens, Compl. ¶ 38; destroying eggs, Compl. ¶¶ 38, 41; exporting

24

excess eggs and flocks, Compl. ¶¶ 38, 39; and dumping excess inventory in foreign markets, Compl. ¶ 40. But appellants provide no facts alleging that Sanderson or its peers actually reduced supply, and that these reductions were the result of an agreement, or were even interrelated. Appellants instead merely use stock phrases such as "worked in concert" and "coordinated." Appellants could have alleged *when* Sanderson Farms decided on its course of supply reduction, *which* industry peers were a part of that decision, *how* specific supply reductions were performed by each of the different poultry producers, *what* information Sanderson Farms knew about its peers' supply reductions, if any, and — perhaps most basic of all — whether Sanderson Farms *actually reduced* chicken supply, and if so, by what volume. Appellants have provided none of these facts.

Appellants' "plus factors" fail to remedy the deficient pleadings. Although appellants allege that, through Agri Stats, Sanderson Farms and its industry peers were able to "facilitate" the supply reductions, they do not allege when and how Sanderson Farms used Agri Stats to know of their peers' supply reductions. Rather, appellants merely allege that by reverse-engineering the Agri Stats data, Sanderson Farms "could" determine whether or not its peers were reducing

25

supply. Compl. ¶ 49. Similarly, they allege that Sanderson Farms had "numerous opportunities to conspire" through its participation in trade associations and plant tours, and that the general structure of the poultry market made it "susceptible to price-fixing." Compl. ¶¶ 69 and 74. But the law is clear that "[t]he mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred." Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc., 996 F.2d 537, 545 (2d Cir. 1993). See also AD/SAT, Div. of Skylight, Inc. v. Associated Press, 181 F.3d 216, 234 (2d Cir. 1999) ("[A]lthough the nature of trade associations is such that they are frequently the object of antitrust scrutiny, every action by a trade association is not concerted action by the association's members.") (internal citation omitted).

Separately, appellants allege that Sanderson Farms and its peers manipulated the pricing reported to the Georgia Dock, and that this manipulation would necessarily require coordination because "[a]s a producer, your high price quote doesn't work unless others go along because it will be an outlier that gets thrown out per the GDA's methodology." Compl. ¶ 62. The detail of this allegation exceeds that of the allegations of supply reductions because here appellants have provided a theory for why price reporting would

26

have had to be coordinated. However, the allegation regarding the Georgia Dock is still insufficient. Appellants have pleaded no facts regarding Sanderson Farms' communications with the Georgia Dock such as what information Sanderson Farms provided to the Georgia Dock, on what occasions, and whether it was false.

For these reasons, appellants have failed to plead the first element of antitrust conspiracy agreement at even a basic level, much less with particularity. Furthermore, on the second and third elements of an antitrust conspiracy, appellants have provided no allegations. The complaint is entirely silent as to whether the supply reductions or the Georgia Dock manipulations unreasonably restrained trade, and whether that restraint affected interstate commerce. This complaint merely attempts to "establish fraud by innuendo," and accordingly, its pleadings are insufficient. Chicago Title & Trust Co. v. Fox Theatres Corp., 182 F. Supp. 18, 33 (S.D.N.Y. 1960).

In view of our disposition of this matter, we need not reach the issues of scienter, reliance, or control person liability under Section 20 of the Exchange Act, 15 U.S.C. § 78(t)(a). See, e.g., In re Corning Sec. Litig., 01 Civ. 6580(CJS), 2004 WL

1056063, at *32 (W.D.N.Y. Apr. 9, 2004); <u>In re Hudson Techs. Sec. Litig.</u>, 98 Civ. 1616(JGK), 1999 WL 767418, at *13 (S.D.N.Y. Sept. 28, 1999).

## CONCLUSION

For the foregoing reasons, we hold that when a securities fraud complaint claims that statements were rendered false or misleading through the nondisclosure of illegal activity, the facts of the underlying illegal acts must be pleaded with particularity in accordance with the requirements of Rule 9 and the PSLRA. Because appellants have failed to meet this pleading standard for the underlying allegations of illegal antitrust conspiracy, their complaint was deficient. Accordingly, we affirm.