20-1530-cv
*Gray v. Wesco Aircraft Holdings, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of February, two thousand twenty-one.**

Present:
> ROBERT A. KATZMANN,
> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

JACOB GRAY, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.                                                            No. 20-1530-cv

WESCO AIRCRAFT HOLDINGS, INC., RANDY J. SNYDER, TODD RENEHAN, DAYNE A. BAIRD, THOMAS M. BANCROFT, III, PAUL E. FULCHINO, JAY L. HABERLAND, SCOTT E. KUECHLE, ADAM J. PALMER, ROBERT D. PAULSON, JENNIFER M. POLLINO, NORTON A. SCHWARTZ,

*Defendants-Appellees.*[1]

---

[1] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

For Plaintiff-Appellant:　　　　　　　　MILES D. SCHREINER (Juan E. Monteverde, *on the brief*), Monteverde & Associates, PC, New York, NY.

For Defendants-Appellees:　　　　　　　J. CHRISTIAN WORD, Latham & Watkins LLP, Washington, DC.

Appeal from the judgment of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Jacob Gray, on behalf of himself and other similarly situated former shareholders of Wesco Aircraft Holdings, Inc. ("Wesco"), appeals from the dismissal of his complaint against Defendants-Appellees Wesco and former members of Wesco's board of directors, alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). At issue are allegedly false and misleading statements and an omission in Wesco's September 13, 2019, Definitive Proxy Statement (the "Proxy") filed in connection with Wesco's merger with Platinum Equity Advisors, LLC and its affiliates (together, "Platinum"). Gray alleges that the Proxy misleadingly portrayed Wesco's future financial performance and valuation in a depressed light in order to induce shareholders to approve the inadequate merger consideration ($11.05 per Wesco share) offered by Platinum. According to Gray, Wesco shareholders suffered an economic loss based on the difference between the merger consideration and the intrinsic fair value of the shares. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review de novo the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Litwin v.*

2

*Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We agree with the District Court that the complaint fails to plead that Gray suffered a non-speculative economic loss, as required for the claims. "In any private action arising under [the Exchange Act], the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate [the Exchange Act] caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4); *see also Grace v. Rosenstock*, 228 F.3d 40, 48 (2d Cir. 2000).[3]

Gray's theory of economic loss is based on the difference between the $11.05 merger share price and what the complaint describes as "the true value of [the] shares prior to the Merger." Joint App'x 65 ¶ 144. But the allegation that the latter is higher than the former is inadequate because it is speculative and conclusory. The complaint offers two allegations of true value: first, the complaint alleges that, shortly after the news broke that Wesco was exploring the possibility of a merger, research analysts estimated that bidders might offer Wesco up to around $16.00 to $18.00 per share, and estimated a value of up to $13.00 per share the day before Wesco signed the merger agreement. Second, the complaint alleges that, based on "Initial Projections" of future financial performance prepared by Wesco when it first started to explore a merger, the implied value of

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

[3] We have previously noted that it is unsettled whether the heightened particularity standard under Fed. R. Civ. P. 9(b) or the plausibility standard under Fed. R. Civ. P. 8 applies to pleading economic loss. *See Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 37–38 (2d Cir. 2012). We need not resolve this issue today, because we find that economic loss was not adequately pleaded under either standard.

Wesco's shares was between $12.44 and $18.39. Later, Wesco lowered its projections in a set of "Updated Projections," based on which its financial advisors concluded, as reported in the Proxy, that the $11.05 merger consideration was fair. The complaint alleges that the "Updated Projections" were illegitimate and were created to justify the inadequate merger consideration that Wesco ultimately accepted.

We cannot plausibly infer from these allegations that the true value of Wesco was necessarily higher than the merger consideration. As to the analysts' estimates, although Gray asks us to focus on estimates of what hypothetical bidders might have been willing to offer for the shares, the complaint has far more compelling allegations that contradict Gray's theory: what potential buyers in fact offered. According to the complaint, in June and July of 2019, three potential buyers submitted bids ranging from $11.00 to $12.00 per share, and another potential buyer, without submitting a bid, preliminarily assessed Wesco's value at $10.50 per share. The complaint furthermore alleges that these bidders had access to confidential information about Wesco's businesses to conduct their due diligence, and thus their actual offers tend to be more revealing allegations of Wesco's value than what analysts estimated the bidders might offer.

Similarly, Gray's allegation that the shares were intrinsically worth between $12.44 and $18.39 based on the Initial Projections is too speculative to plead economic loss. As the District Court aptly noted, the complaint fails to allege that the Initial Projections were sufficiently likely, or that shareholders faced a genuine choice "between the Merger and the achievement of the Initial [] Projections." Joint App'x 256–57; *see Beck v. Dubrowski*, 559 F.3d 680, 684 (7th Cir. 2009) (holding that plaintiff failed to plausibly allege economic loss where he alleged that "shareholders would have rejected the merger and by doing so have reaped the economic benefits of continuing to own [] shares" without alleging that other more lucrative options existed for the company).

4

The complaint describes the long history of Wesco's financial underperformance, which prompted management to seek out bidders for a merger. Before news of a possible merger, the shares were trading at only around $8.00 to $9.00, and then fluctuated between around $10.00 to $11.00 in the period after the news became public. According to the Proxy, equity research analysts' estimates of the one-year forward price targets for Wesco stock (*i.e.*, assuming no acquisition) as of August 7, 2019 were $9.00 to $13.00 per share on an undiscounted basis and $8.30 to $11.90 per share on a discounted basis.[4] No potential purchaser offered a price higher than between $11.00 and $12.00, and indeed 13 out of 14 potential acquirers lost interest in acquiring Wesco. The primary support for drawing an inference that Wesco's value might increase to the extent implied in the Initial Projections is the general allegation that Wesco's management had a stand-alone plan for growth. Considering all of these allegations together, we cannot conclude that the Initial Projections provide a sufficient basis for pleading loss causation.[5]

---

[4] Because the Proxy is incorporated by reference into the complaint, we may properly take it into account at this motion to dismiss stage. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (holding that a court ruling on a motion to dismiss may consider, *inter alia*, "statements incorporated by reference [and] public disclosure documents filed with the SEC").

[5] Because we hold that a primary violation of Section 14(a) was not adequately alleged, it follows that the district court correctly dismissed Gray's Section 20(a) claims against individual director defendants based on control person liability. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person . . . ."); *see also* 15 U.S.C. § 78t(a).

We have considered all of Gray's remaining arguments on appeal as to economic loss and have found in them no grounds for reversal. For the reasons above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk