23-862-cv
*Gomez v. Credit Suisse AG*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9ᵗʰ day of February, two thousand twenty-four.

PRESENT:
> ROBERT D. SACK,
> REENA RAGGI,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

---

ADELINA GOMEZ, on behalf of herself and all others similarly situated,

> *Plaintiff-Appellant,*

> v.                                                                 23-862-cv

CREDIT SUISSE AG,

> *Defendant-Appellee.*

---

FOR PLAINTIFF-APPELLANT:          DANIEL CENTNER, Peiffer Wolf Carr Kane Conway & Wise, LLP, New Orleans, Louisiana (Daren A. Luma, Daren A. Luma, PLLC, White Plains, New York, *on the brief*).

FOR DEFENDANT-APPELLEE:          HERBERT S. WASHER (John S. MacGregor and Sheila C. Ramesh, *on the brief*), Cahill Gordon & Reindel LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (John P. Cronan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on May 2, 2023, is **AFFIRMED**.

Plaintiff-Appellant Adelina Gomez appeals from the dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of her putative class action against Defendant-Appellee Credit Suisse AG ("Credit Suisse"), brought under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. The district court granted Credit Suisse's motion to dismiss after finding that Gomez had failed to plausibly allege a material misstatement or omission, a manipulative scheme, or an inference of scienter, as required to state a claim under Section 10(b) and Rule 10b-5, in connection with Credit Suisse's offering of certain Exchange Traded Notes ("ETNs") trading under the name DGAZ. *See Gomez v. Credit Suisse AG*, No. 22 Civ. 115 (JPC) (BCM), 2023 WL 2744415 (S.D.N.Y. Mar. 31, 2023).[1]

To avoid dismissal under Rule 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We review a Rule 12(b)(6) dismissal *de novo*, "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Id.* Allegations of securities fraud must satisfy the heightened pleading burdens of both Federal Rule of Civil Procedure 9(b) and the Private

---

[1] The district court granted leave to amend within thirty days "if [Gomez could] remedy the pleading deficiencies" it identified. *Id.* at *14. Gomez did not file an amended complaint within thirty days, and the district court accordingly entered final judgment on May 2, 2023.

Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2)(A) ("PSLRA"), which require a pleading of, *inter alia*, the defendant's mental state and "the circumstances constituting fraud," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting Rule 9(b)), and "facts giving rise to a strong inference that the defendant acted with the required state of mind," *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

Gomez argues that her complaint stated claims for both (1) material misstatements or omissions under Rule 10b-5(b) and (2) market manipulation under Rule 10b-5(a) and (c).[2] An element of both claims is scienter. *See In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 417 (2d Cir. 2023) (material misrepresentation or omission); *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 76 (2d Cir. 2021) (market manipulation). For purposes of Rule 10b-5, scienter is defined as an "intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks and citation omitted); *see also In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th at 417. "Scienter may be established by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *New*

---

[2]  The complaint included a single cause of action for violations of Section 10(b) and Rule 10b-5, focusing on fraudulent misrepresentation, and only mentioned "manipulation" in two instances, neither of which alleged action by Credit Suisse. *See* Joint App'x 33–34 ("Plaintiff [believed] that the market . . . would continue to be an efficient one free from manipulation"; "Plaintiff was misled to believe the prices . . . were . . . not rigged by manipulators"). However, given Gomez's allegations that Credit Suisse "acted with scienter in making the decision to delist and suspend further issuance" of DGAZ and "artificially controlled the market," Joint App'x 33–35, we address both potential claims here.

*Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 177 (2d Cir. 2023) (internal quotation marks and citation omitted). "Any allegation of conscious misbehavior or recklessness should be viewed holistically and together with the allegations of motive and opportunity to determine whether the complaint supports a strong inference of scienter." *Id.* (internal quotation marks and citation omitted). And to adequately plead conscious misbehavior or recklessness, a plaintiff must allege "*conscious* recklessness—*i.e.*, a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (first emphasis added) (internal quotation marks and citation omitted).

"Circumstantial evidence can support an inference of scienter . . . where defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (internal quotation marks and citations omitted). In any event, the inference of intent to defraud or manipulate "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

As set forth below, the district court correctly concluded that Gomez failed to plausibly allege a strong inference of scienter as required for a fraudulent misrepresentation or market manipulation claim.[3] Gomez cites as motives Credit Suisse's "potential[]" interest in either

---

[3] Because we affirm the dismissal of the complaint on this ground, we need not address the district court's alternate holding that the factual allegations were also insufficient to plausibly allege a material misrepresentation or manipulative acts under the other elements of those claims.

4

"sell[ing] into the short squeeze" that occurred when DGAZ's price spiked in August 2020 or "receiv[ing] continued fees instead of having to pay to accelerate all of the outstanding notes." Appellant's Br. at 22. Neither motive is plausible. First, as alleged in the complaint, Credit Suisse did *not* sell any of its 431,350 units of DGAZ between June 22, 2020 and August 12, 2020, even though the market price of DGAZ increased from less than $600 to approximately $25,000 per note during that period. In other words, Credit Suisse's decision not to sell the DGAZ units it held during this period was a decision to abstain from making a potentially multi-billion dollar profit. Second, the investor fees Credit Suisse received between June 22, 2020 and August 12, 2020 only amounted to approximately $135,600.[4] The inference that Credit Suisse engaged in securities fraud to collect this sum—particularly when it could have made more than $10 billion by selling its DGAZ units—is not one that we find plausible. In short, neither motive is consistent with the facts as alleged in the complaint.

Alternatively, Gomez argues that an inference of scienter can be drawn from Credit Suisse's alleged recklessness in failing to disclose information. We disagree. "Where [a] motive is not apparent, . . . the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Here, the circumstantial allegations are not strong. The offering documents for DGAZ contained detailed warnings of the risks involved in holding the ETN. For example, Credit Suisse warned that holding DGAZ for "more than a single day" could result in the loss of the full value of the investment, Joint App'x at 126; that the trading price of DGAZ could "vary significantly" from the value of the underlying natural gas index the

---

[4] In her reply brief, Gomez notes that this figure does not appear in the complaint. However, she takes no substantive issue with its calculation by the district court, which was based on the complaint's allegation that the fees amounted to "approximately $1.5 million annually." Joint App'x at 14, 82.

ETN was intended to track "because the market value reflects investor supply and demand for the ETNs," *id.* at 115; that a decision by Credit Suisse to cease issuing DGAZ could, by decreasing supply, "cause the ETNs to trade at a premium over the [value of the underlying index]," *id.* at 98; and that Credit Suisse could delist DGAZ "in [its] sole discretion . . . at any time and for any reason," *id.* at 145. Many of these warnings were in bold or otherwise emphasized. In addition to these disclosures, Credit Suisse issued a press release on June 22, 2020, announcing that it would cease issuing DGAZ immediately and delist DGAZ by July 12, 2020. The press release reiterated the warning that Credit Suisse's actions could impact the trading price of DGAZ, because the market value of DGAZ may be "influenced by, among other things, the levels of actual and expected supply and demand for the ETNs in the secondary market," and cautioned in particular that the development of a price premium—in which the market price of DGAZ would rise above the value of the underlying index—or the illiquidity of the market could lead to substantial losses. Joint App'x at 293. Additionally, Gomez had access to press reports indicating that conditions were ripe for the development of a price premium, which would put pressure on investors, such as herself, with short positions in DGAZ.

The warnings Credit Suisse included in the press release, on top of those in the offering documents, adequately captured the range of risks investors in DGAZ faced, particularly when the offering documents had cautioned investors against holding DGAZ for more than one day. As such, the absence of a specific warning about how the combination of a price premium and an illiquid market could or would likely affect investors with short interests does not constitute sufficient circumstantial evidence of recklessness to give rise to an inference of scienter. An issuer "cannot be expected to predict and disclose all possible negative results across any market

6

scenario," *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 105 (2d Cir. 2013), and the alleged omissions here, in light of the disclosures, do not constitute "strong evidence of conscious misbehavior or recklessness," *Kalnit*, 264 F.3d at 144 (emphasis omitted).

Gomez does not specifically argue that Credit Suisse's other actions—namely, its decisions to delist DGAZ, to ultimately accelerate it, or to hold rather than sell its inventory—support an inference of scienter. In any event, we do not find that these actions plausibly support such an inference, whether viewed through the lens of motive and opportunity discussed above, or so as to establish recklessness. *See In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (defining recklessness as "represent[ing] an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it"). Outside the context of scienter, Gomez suggests that Credit Suisse should have known that its actions posed a "very likely, almost certain risk" of a price premium developing. Appellant's Reply Br. at 3. However, as her own complaint alleges, the decision to delist an ETN had historically caused the ETN to trade at a *discounted* price, not an inflated one, and, even in this instance, DGAZ maintained a stable trading price for nearly one month after it was delisted. In short, the complaint fails to allege recklessness sufficient to support an inference of scienter, let alone one "at least as compelling as [the] opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. As a result of its failure to state plausible facts supporting an inference of scienter, the complaint fails to state a claim under either the material misstatement or omission or market manipulation theory of Section 10(b) liability. Therefore, the complaint was properly dismissed.

\*      \*      \*

7

We have considered Gomez's remaining arguments and conclude that they are without merit.   Accordingly, the judgment of the district court is **AFFIRMED**.

        FOR THE COURT:
        Catherine O'Hagan Wolfe, Clerk of Court